IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CR-153-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AUSTIN KYLE LEE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 100). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 119). Defendant timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendant's motion is denied.

## STATEMENT OF THE CASE

Defendant is charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a quantity of marijuana, and five kilograms or more of cocaine; three counts of distribution of a quantity of heroin; one count of possession with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a quantity of marijuana, and a quantity of cocaine; one count of possession of firearms in furtherance of a drug trafficking crime; and one count of possession of firearms by a convicted felon.

The federal public defender, who was appointed to represent defendant at initial appearance on October 9, 2018, withdrew on November 28, 2018, after learning of a conflict of interest that would arise if he continued to represent defendant. Defendant's second appointed counsel noticed his appearance on December 3, 2018, and was allowed to withdraw one and a half months later due to a conflict of interest that would prevent him from representing defendant. Defendant's third appointed counsel entered his appearance on January 22, 2019. About two months later, defense counsel moved to withdraw, but the court denied the motion. Defense counsel renewed his motion to withdraw on May 7, 2019, and the motion was granted by the court due to the total lack of communication and irreparable breakdown of the attorney-client relationship.

Defendant's fourth appointed counsel noticed his appearance on May 9, 2019. By the following month, defendant filed pro se motion to appoint new counsel, motion for release from custody, and motion to dismiss. On July 2, 2019, defense counsel moved for psychiatric examination of defendant, which the court granted six days later. Following completion of psychiatric examination, the court held competency hearing and concluded on October 21, 2019, that defendant was not suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. On November 8, 2019, upon review of the magistrate judge's October 21, 2019, order denying defendant's pro se motion to appoint new counsel, the court allowed defense counsel to withdraw.

On November 13, 2019, defendant's fifth and sixth appointed counsel, both of whom currently represent defendant, entered their notices of appearance.[1] Defendant, through counsel, filed the instant motion on March 5, 2020, relying upon numerous exhibits. Though filed out of

---

[1] Defendant's seventh appointed counsel noticed her appearance in the instant matter on April 22, 2020.

time, the court granted defendant leave to file his motion two weeks later. Following briefing on the motion, the court held evidentiary hearing on May 5, 2020, where it received testimony from sergeant Aaron Hernandez and detective Jonathan Marshburn from the Onslow County Sheriff's Office, as well as documentary evidence from the government. The magistrate judge entered his M&R on June 8, 2020, and defendant timely objected.

## STATEMENT OF FACTS

The facts pertinent to the instant motion may be summarized as follows. On or about April 20, 2016, the Onslow County Sheriff's Office searched confidential a suspect in a drug investigation. (Gov't Ex. 1 ¶ 16).[2] During the search, the suspect's phone was continuously ringing, prompting detectives to question him regarding who was calling. (Id.). The suspect explained that the call was from his drug dealer, who was going to arrive at his residence with cocaine. (Id.). When asked who his drug dealer was, the suspect identified him as a light skinned black male on probation from New York or one of the states up north residing at 113 Ridge View Drive. (Id.). Hernandez contacted North Carolina Probation Officer M. Pugliese, who informed Hernandez that defendant was a male residing at 113 Ridge View Drive currently on probation transferred from New York. (Id. ¶ 17). Thus, Hernandez identified the drug dealer as defendant. (Id. ¶ 18).

On January 21, 2017, Officer J. Smith of the Jacksonville Police Department conducted a traffic stop on a Lexus LS430, because the registered owner's driver's license was suspended. (Id. ¶ 20). During the stop the driver was identified as defendant, who was subsequently arrested after Smith smelled the odor of marijuana from within the vehicle. (Id.; see Transcript of Hr'g ("Tr.")

---

[2] The search warrant application for 113 Ridge View Drive provided substantially identical information as the search warrant for 109 Ridge View Drive. (Compare 113 Ridge View Drive Warrant (DE 100-9) with Gov't Ex. 1; 109 Ridge View Drive Warrant (DE 100-15)).

3

32:9–21). Defendant had previously been arrested by the Jacksonville Police Department for possession with intent to manufacture, sell, and deliver, and selling and delivering heroin on October 28, 2016. (Tr. 33:5–17; Gov't Ex 1 ¶ 19; see Dorn Report (DE 100-1) at 2).

On August 9, 2017, law enforcement observed the sale of 4.8 grams of heroin. (Gov't Ex. 1 (DE 100-15) ¶ 21). The drug dealer arrived in a black Lexus LS430. (Id.). Later a suspect informed law enforcement that the drug supplier was a light skinned black male who was about 30 years old and went by the name of Justin. (Id. ¶ 22). The physical description of Justin matched defendant. (Id.). Several months later, in December 2017, another suspect told law enforcement that he purchased approximately three grams of heroin a day for the last several months from an individual he know as "Justin." (Id. ¶ 23). When shown a photo of defendant, the suspect confirmed that he knew defendant as Justin. (Id.). The suspect further informed law enforcement that defendant would arrive at the Walgreens located at highway 258 in a black high-end vehicle to deliver the heroin. (Id.).

On December 19, 2017, Hernandez again contacted Pugliese, who again related that defendant was a parole transfer from the State of New York for convictions for controlled substances. (Id. ¶ 24; see New York Judgment (DE 100-5) at 2–6). Defendant's current address was registered as 113 Ridge View Drive, and defendant was required to abide by a 6:00 p.m. curfew monitored by ankle bracelet. (Gov't Ex. 1 ¶ 24; see Tr. 10:6–14). That same day, at around 5:45 p.m., law enforcement observed a black Lexus LS430 pull out of the garage of 109 Ridge View Drive. (Gov't Ex. 1 ¶ 25). An individual matching defendant's description drove the car over to 113 Ridge View Drive and went into the house. (Id.; Tr. 11:21–12:7).

About a week later, law enforcement observed the Lexus park in the garage at 109 Ridge View Drive. (Gov't Ex. 1 ¶ 26). A black female walked to the front door of 109 Ridge View

4

Drive and returned to 113 Ridge View Drive with an object in her hand that was not there when she arrived. (Id.; see Tr. 11:1–9). At 5:55 p.m., defendant walked from 109 Ridge View Drive to 113 Ridge View Drive. (Gov't Ex. 1 ¶ 26). The next day, law enforcement trailed defendant who was in the Lexus, as he traveled from 109 Ridge View Drive to an apartment complex. (Id. ¶ 27). Defendant remained in the parking lot for about a minute, then parked his car at 109 Ridge View Drive and went inside the house. (Id.). Later, defendant again left the residence, driving in a manner that caused law enforcement to believe that he was trying to determine if he was being followed. (Gov. Ex. 1 ¶¶ 27–28; Tr. 15:17–16:11). Defendant eventually returned to 109 Ridge View Drive.[3] (Id. ¶ 27).

On February 1, 2018, defendant left 109 Ridge View Drive in a black Lexus. (Id. ¶ 31). He met with a person known to law enforcement to be a heroin user and distributer. (Id.). The meeting lasted about 30 seconds. (Id.). Law enforcement stopped the person defendant met and found him in possession of about 5.3 grams of heroin. (Id.). The suspect told Hernandez he had given defendant $315.00 for the 5.3 grams of heroin. (Id.).

On February 2, 2018, Hernandez swore out a warrant for defendant's arrest based upon the events occurring the day before. (Id. ¶ 33; Tr. 24:15–22; Arrest Warrant (DE 100-7) at 2). At about 1:30 p.m., surveillance activity showed defendant left 109 Ridge View Drive in the black Lexus. (Gov't Ex. 1 ¶ 33). About four minutes later, law enforcement initiated a traffic stop and arrested defendant. (Id.). During a search of defendant Lee's person, detective J. Straughan located in defendant's pocket a plastic bag containing several other plastic bags, which in turn held an off-white powder. (Id.). Based on the packaging and the color of the powder, Straughan

---

[3] Law enforcement applied for, and received, permission to install and monitor an electronic tracking device on the black Lexus driven by defendant on December 29, 2017. (GPS Application (DE 100-2) at 2–9; Order Granting Application (DE 100-6) at 2–4).

5

believed the substance to be heroin. (Id.). Law enforcement also searched the Lexus and found a set of house keys, which they retrieved. (Id. ¶ 36). After defendant was taken into custody, detectives transported defendant back to 113 Ridge View Drive, where defendant told Straughan that the residence at 109 Ridge View Drive is occupied by a military couple. (Id. ¶ 35).[4] At around the same time defendant was transported back to 113 Ridge View Road, Hernandez began the process of securing a search warrant for the properties, which in his estimation took between two and four hours. (Tr. 13:7–10, 13:20–14:5; see Hernandez Report (DE 100-10) at 11).

Using the set of keys found in the Lexus, officers entered the residence at 109 Ridge View Drive to conduct a "protective sweep," during which they could smell a strong odor of marijuana emanating from the residence. (Gov't Ex. 1 ¶ 35; Tr. 46:25–49:1).

Using all this information, Hernandez applied for search warrants to search 109 Ridge View Drive and 113 Ridge View Drive. (Tr. 5:8–13, 5:19–6:6). Hernandez opined that defendant used 109 Ridge View Drive as a stash house for drugs. (Gov't Ex. 1 ¶ 35). Hernandez further opined that defendant used the property to avoid detection by law enforcement because, as a parolee, he could be subject to warrantless searches at 113 Ridge View Drive. (Id.; Tr. 15:11–16, 16:17–18:8).

After getting the search warrant around 3:33 p.m., (see Gov't Ex. 1 at 1), law enforcement executed a search of 109 Ridge View Drive at about 4:39 p.m. and uncovered, among other things, 166 grams of heroin and 363 grams of cocaine, 137 grams of marijuana, three handguns, digital scales, $210,767.00 in U.S. currency, and a lease agreement. (109 Ridge View Drive Inventory (DE 100-16) at 2–3; Hernandez Report (DE 100-10) at 2, 12). At 113 Ridge View Drive, law enforcement found some identifying information and a small amount of suspected crack cocaine

---

[4] The court notes that, likely due to a typographical error, there are multiple paragraph 35s in the application for search warrant, all appearing on the same page.

and drug paraphernalia. (Barrera Report (DE 100-13) at 3–4). Defendant was taken to the police station at 6:35 p.m. (Gov't Resp. (DE 110) at 10).

Days later, while in custody, defendant repeatedly requested to speak to Hernandez. (Tr. 22:22–23:9). In two separate interviews, Hernandez told defendant his Miranda rights, which defendant waived. (Tr. 23:10–20). Defendant then made several incriminating statements to Hernandez about his drug distribution activity in the Jacksonville area, including his methods, quantities sold, his use of firearms for protection, and specific instances of drug dealing. (Gov't Resp. (DE 110) at 6).

## COURT'S DISCUSSION

A.     Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Analysis

In his M&R, the magistrate judge concluded 1) that entry by law enforcement into 109 Ridge View Drive and 113 Ridge View Drive without search warrants violated the Fourth

Amendment, 2) that the evidence obtained by these unlawful searches should not be suppressed because law enforcement would have inevitably discovered the evidence of criminal activity contained therein, and 3) that defendant's statements to law enforcement need not be suppressed as fruit of the poisonous tree.  Neither party objects to the magistrate judge's first conclusion, and the court finds no clear error in the determination that a violation of the Fourth Amendment occurred in this case.  Defendant objects to the magistrate judge's second and third conclusions.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The Fourth Amendment's exclusionary rule normally prevents the government from using evidence obtained as a result of an illegal search against the victim of that search."  United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017).  However, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . the evidence should be received."  Nix v. Williams, 467 U.S. 431, 444 (1984).

"Inevitable discovery demands that the prosecution prove by a preponderance of the evidence: first, that police legally could have uncovered the evidence; and second, that police would have done so."  United States v. Alston, 941 F.3d 132, 138 (4th Cir. 2019).  Evidence supporting a finding of inevitable discovery "might include proof that, based on independent evidence available at the time of the illegal search, the police obtained and executed a valid warrant subsequent to that unlawful search."  United States v. Allen, 159 F.3d 832, 841 (4th Cir. 1998); United States v. Whitehorn, 813 F.2d 646, 648–50 (4th Cir. 1987).

"[T]he inclusion of certain illegally obtained information in the application for a search warrant does not require suppression of the evidence seized under the warrant . . . if, excluding the

illegally obtained information, probable cause for the issuance of the warrant could still be found." United States v. Apple, 915 F.2d 899, 910 (4th Cir. 1990); United States v. Gillenwaters, 890 F.2d 679, 681–82 (4th Cir. 1989). Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. United States v. Doyle, 650 F.3d 460, 471 (4th Cir. 2011) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Probable cause is evaluated based upon the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230–41 (1983).

In United States v. Grossman, the United States Court of Appeals for the Fourth Circuit considered whether search warrants to search several of defendant's stash houses were supported by probable cause. 400 F.3d 212, 217 (4th Cir. 2005). There, the court upheld search of the first of defendant's stash houses based on information from a reliable informant identifying defendant as a drug dealer, law enforcement's observations of defendant's suspicious and evasive behavior just outside the home's front door, and defendant's possession of a key to the house. Id. at 417, 418. In United States v. Williams, the court found that probable cause supported issuance of a search warrant for defendant's motel room where defendant had a criminal history involving drug trafficking, his car contained drug residue and a concealed knife, and he was carrying a receipt for the motel room. 974 F.2d 480, 480–81 (4th Cir. 1992). And in United States v. Christian, the Fourth Circuit found probable cause to search a residence where law enforcement confirmed that defendant frequented the residence, traveled between the residence and the site of alleged drug dealing, and had sold cocaine within five days prior to the warrant application. 544 F. App'x 188, 190 (4th Cir. 2013).

Here, it is undisputed by the parties that the portion of the search warrants referencing law enforcement's protective sweeps of the Ridge View Drive properties cannot be used to support a

finding of probable cause where, as here, the court has found a Fourth Amendment violation. Yet even with that information excised, this case compels a similar result as in Grossman, Williams, and Christian. Multiple people described buying drugs from an individual that law enforcement independently verified matched defendant's description, based upon characteristics including defendant's physical features, probationary status and residence, and the black Lexus that he drove to numerous drug transactions. (See Gov't Ex. 1 ¶¶ 16–18, 21–23, 31). Moreover, law enforcement knew that defendant had been convicted in New York for controlled substance offenses. (Id. ¶ 24). The day before his arrest, law enforcement witnessed defendant conduct what they believed to be a drug deal, stopped defendant's contact, and confirmed that the heroin found on the suspect's person was sold to him by defendant. (Id. ¶ 31). On several occasions, including the day of his arrest, defendant was found to have controlled substances in the Lexus. (Id. ¶¶ 20, 33).

Though the evidence does not show that defendant ever conducted any drug transactions at the Ridge View Drive properties, ample evidence supports probable cause to believe that contraband would be found at the properties. Law enforcement repeatedly observed defendant coming and going from 109 Ridge View Drive before and after activity consistent with drug transactions, including evasive driving maneuvers to determine if he was being followed. (Id. ¶¶ 27–28, 30–31, 33). Defendant also tried to hide his connection to 109 Ridge View Drive from law enforcement by concealing the address from his probation officer and telling law enforcement that the property was occupied by a military couple. (See id. ¶¶ 24, 35). At the same time, law enforcement knew that defendant had power to 109 Ridge View Drive titled in his name. (Id. ¶ 34). In sum, the search warrant for 109 Ridge View Drive was valid with the impermissible

10

Case 7:18-cr-00153-FL   Document 124   Filed 09/18/20   Page 10 of 13

protective sweep excised from the affidavit, and suppression of the fruits of that search is not warranted.

The same result obtains as to 113 Ridge View Drive. As discussed above, law enforcement knew defendant had a criminal history involving drug trafficking. (113 Ridge View Drive Warrant (DE 100-9) ¶¶ 16–18, 21–24, 31, 33). The day of his arrest, he was found to have controlled substances in his Lexus. (113 Ridge View Drive Warrant (DE 100-9) ¶ 33). He also registered with the probation office 113 Ridge View Drive as his residence, and he and other residents were regularly seen coming and going from 109 Ridge View Drive. (113 Ridge View Drive Warrant (DE 100-9) ¶¶ 24–26). Moreover, in Hernandez's training and experience, drug traffickers keep contraband, including drugs and firearms, in multiple residences and in close proximity for easy access, concealment, and protection. (Id. ¶¶ 2–4, 10, 15). Based on the totality of the circumstances set forth in the search warrant application, less the unconstitutional protective sweep, contraband would inevitably have been discovered at 113 Ridge View Drive.

Finally, defendant's incriminating statements made while in custody need not be suppressed due to law enforcement's violation of the Fourth Amendment. See United States v. Watson, 703 F.3d 684, 697 (4th Cir. 2013); United States v. Seidman, 156 F.3d 542, 549 (4th Cir. 1998). Because the discovery of contraband at defendant's residence was inevitable due to sufficient factual information to support the warrant without the unlawful protective sweep, the misconduct in this case was minor. Defendant was given Miranda warnings prior to his statements. The temporal proximity between arrest and confession weighs against suppression, where defendant talked to law enforcement four days after arrest and again about a week later, affirming the statements he previously made. Moreover, defendant repeatedly contacted law enforcement seeking to provide the statements. In sum, defendant's statements are too attenuated from the

11

unlawful entry by law enforcement into 109 Ridge View Drive and 113 Ridge View Drive prior to execution of the search warrants to be suppressed as fruit of the poisonous tree.

Defendant argues that the information given by the several informants identifying him as a drug dealer does not support probable cause in the instant case, questioning their veracity and reliability. (Def. Obj. (DE 122) at 3–7). Defendant's argument is without merit. As noted in Gates, a confidential informant's hearsay must be evaluated in light of the totality circumstances. 462 U.S. at 230–41. Here, the confidential informants' statements identifying defendant as a drug dealer were corroborated by law enforcement's investigation into defendant's criminal history and probationary record, his possession of drugs at various times, observation of the car defendant drove and its presence at drug transactions, observation of defendant conducting a drug transaction the day before his arrest, and surveillance of defendant's very suspicious and erratic driving coming from and going to 109 Ridge View Drive and 113 Ridge View Drive. In sum, the confidential informants' identification of defendant as a drug dealer bears sufficient indicia of reliability based on the totality of the circumstances.

Defendant also argues that, at most, the facts in the search warrant only support the search of the Lexus and not the Ridge View Drive Properties. (Def. Obj. (DE 122) at 7–8). For the reasons discussed more fully above, the court rejects defendant's argument. The totality of the circumstances presented in Hernandez's affidavit, less the unlawful entry into the Ridge View Properties prior to execution of the search warrants, demonstrate probable cause to believe that contraband would be found at 109 Ridge View Road and 113 Ridge View Road.

## CONCLUSION

Based on the foregoing, defendant's motion to suppress (DE 100) is DENIED.

SO ORDERED, this the 18th day of September, 2020.

                                        LOUISE W. FLANAGAN
                                        United States District Judge

13

Case 7:18-cr-00153-FL   Document 124   Filed 09/18/20   Page 13 of 13